[Civil No. 3320.   Filed February 26, 1934.]

[29 Pac. (2d) 726.]

W. J. BURNS and J. J. WESLEY, Appellants, v. THE STATE LAND DEPARTMENT OF THE STATE OF ARIZONA and HOWARD J. SMITH, Successor to DON C. BABBITT, State Land Commissioner, Appellees.

Messrs. Armstrong, Kramer, Morrison & Roche, Mr. J. B. Zaversack and Mr. G. W. Shute, for Appellants.

Mr. Arthur T. La Prade, Attorney General, and Mr. James R. McDougall, Assistant Attorney General, for Appellees.

Mr. Charles Woolf, *Amicus Curiae.*

ROSS, C. J.—The appellant J. J. Wesley in 1923 leased from the state of Arizona 244 acres of common school land, being part of section 16, township 1 south, range 4 east. Subsequently the same land was leased to him and appellant W. J. Burns. They cleared, leveled and cultivated the land under renewal of leases until and including 1930. In March, 1929, the state land commissioner received an application to purchase the land and he caused the board of appraisers of Maricopa county, in which county the land is situate, to appraise the leased premises and the improvements thereon. The appraisers classified as improvements everything except the land itself and the water right attached thereto. In arriving at the value of the land they included the water right as a part thereof and did not classify it as an improvement for which the lessees should be compensated. The lessees, contending that they were entitled to be paid the value of the water right, appealed from the decision of the appraisers to the superior court of Maricopa county, and that court having sustained the views of the appraisers, the lessees appealed to this court.

These lands are within the irrigable area of the Salt River Reclamation Project and a part of the lands constituting the Roosevelt Agricultural Improvement District No. 1, which was organized August 6, 1923, for the purpose of securing water and water rights from the Salt River Valley Water Users' Association (see sections 3467–3514, Rev. Code 1928). These lands and others in the Roosevelt Agricultural Improvement District No. 1, under an arrangement with the water users' association, were thereafter served with water from the latter's irrigation system. The arrangement or contract for irrigation water for leased school lands was entered into with the water users' association by the state land com-

missioner, with the approval of the Governor of the state, in the manner and form as provided in section 2952, Revised Code 1928. It appears that bonds of the district amounting to hundreds of thousands of dollars were issued and sold to acquire water rights and to install a system of irrigation for the district and which must be paid by taxing the lands of the district. Notwithstanding the leased lands were signed up by the state as the owner thereof, and notwithstanding the cost of the water right is a charge against the land, the lessees claim that they are entitled to be paid the value of the water right, under the provisions of section 3429 reading as follows:

"§ 3429. Lessee of state lands to be credited with assessments paid by him. In the event of the sale of any such state lands, a lessee in possession thereof at the time of such sale, shall, in addition to having his improvements placed thereon appraised in the manner provided by law, be accredited with the water right acquired through the payment of the district assessments and charges paid by him, which water right shall be considered and appraised as an improvement made upon said lands."

By section 3425 state lands in irrigation districts are to be treated the same as lands in private ownership, so far as the burdens incident to acquiring water and water rights are concerned. Section 3426 makes "all charges legally assessed for irrigation district purposes . . . a lien" upon state lands in the district, and in case the lands are leased provides that the lessee, at the time he pays to the county treasurer his rental installments, shall submit evidence in the form of a certificate "showing that no unpaid district charges or assessments are due and unpaid against said land."

During the time the lessees occupied said lands as tenants, they paid to the water users' association the current assessments and charges against them and the total amount thus paid was by the appraisers

classified "as an improvement." The water right not having been *acquired* through the payment of any district assessments and charges was not considered and appraised as an improvement upon the land.

If section 3429, *supra,* is so construed as to reimburse the lessee who has during the term of his lease kept up the payment of district assessments and charges, we think it may be sustained. But if it should be construed as in addition to reimbursing him for all improvements, including his assessments and charges, as giving him the value of the water right contracted for by the state and paid for by the state, then we think it does what the legislature had no power to do. It would be donating the water right, or the value thereof rather, to the lessee. The justice of allowing a lessee reimbursement to the value of a water right he has acquired for state land is apparent, but it is difficult to believe the legislature ever intended that a lessee of state land should be paid on the cancellation or surrender of his lease the value of a water right he did nothing either in the way of labor or money to acquire. A lessee acquires a leasehold interest in the water the same as he does in the land to which it is attached and that is all he gets by virtue of his lease. The legislature, it seems to us, would have as much right to classify the land "as an improvement" and pay its value to the lessee as to so classify the water right and pay the lessee its value. In addition, there is this difficulty: The land and the water right together are of considerable value; separate them and they have very little or no value. One cannot be used without the other with any profit. It is, however, quite easy to ascertain the amount of district assessments and charges that the lessee may have paid during the term of his lease.

While the language in section 3429 seems, when unexplained and independent of its context, to convey

the meaning contended for by the appellants, we think because of the big difficulty, if not impossibility, of ascertaining the separate value of the land and water rights, and because of the limitation on the power of the legislature to give away the state's property, that such language should be construed as permitting the lessee to be reimbursed for any outlays in the way of district assessments and charges on the leased land during his term.

We are convinced that the statutes nowhere authorize the lessee of school land to acquire a water right from an irrigation district or to sign it up for district purposes, but that the only persons who may do that are the duly authorized agents of the state, and that in the present case the water right was acquired by operation of law in conjunction with the acts of the state's agents.

The intervener was dismissed by the trial court and did not appeal. His counsel, however, was permitted to file a brief from which we have derived considerable help on some of the questions involved.

The judgment is affirmed.

LOCKWOOD and McALISTER, JJ., concur.